PENNSYLVANIA R. CO. v. ROSENFELD.

(Circuit Court of Appeals, Second Circuit. February 13, 1918.)

No. 146.

GAMING ☞21(1)—LOAN TO PAY GAMING DEBT.

    One who lends money to the loser in an illegal transaction, such as gaming or betting, can recover the loan, notwithstanding he knows that the loser is going to pay his indebtedness with it. ·

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Minnie Rosenfeld against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Certiorari denied 247 U. S. ——, 38 Sup. Ct. 579, 62 L. Ed. ——.

Burlingham, Montgomery & Beecher, of New York City, for plaintiff in error.

Otto A. Samuels, of New York City, for defendant in error.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. This was an action tried by Judge Manton against the Pennsylvania Railroad Company to recover the possession of two locomotives and damages for their detention. The Railroad Company defended on the ground that the plaintiff had no title. A verdict was rendered for the plaintiff, and judgment entered for $3,059.20. The parties stipulated:

    "That the value of the property described in the complaint is as therein set forth, and, if plaintiff is entitled to recover, her damages are fixed at $25; also that plaintiff demanded the return of the goods from the defendant before the commencement of this action, and that plaintiff need not prove value or demand on the trial of this action."

The circumstances out of which the claim arose are peculiar. One Rodgers had what is known as a 'phone room, in which he made bets on horse races over the telephone. Philip S. Abrahams was in the habit of bringing him bets of third parties, for which service Rodgers paid him a commission of 5 per cent. December 11, 1915, Rodgers gave Abrahams a check for $1,632 to cover bets which he had lost to one Davis and the commission of 5 per cent. This check being unpaid, Abrahams paid Davis. Rodgers lost additional bets with Davis to the amount of $1,180, and on December 23, 1915, gave Abrahams a bill of sale, which was filed in the register's office, for two locomotives and other property, with instructions to raise enough money upon them to pay off the indebtedness of $2,812 and expenses, any surplus to go to Rodgers. December 24th Abrahams transferred this bill of sale by a separate writing, which was not filed, to the plaintiff, Minnie Rosenfeld, to secure the repayment of $2,000 previously advanced by her and applied by Abrahams to paying Rodgers' bets and a further present advance of $900 to Rodgers. Plaintiff knew that the

moneys advanced by her were to be used to pay indebtedness incurred in gaming. March 10, 1916, Abrahams sold the two locomotives to the General Equipment Company of New York for $3,000, with the approval of the plaintiff, who did not wish to appear in the transaction, but before delivery Rodgers sold them to the Vulcan Iron Works of Chicago, and delivered them to the Pennsylvania Railroad Company for shipment. The plaintiff demanded possession of them from the company, which refused to deliver them, whereupon this action was brought.

The real defense is that the plaintiff cannot recover, because of section 993 of the Penal Law of New York (Consol. Laws, c. 40), which reads:

"All things in action, judgments, mortgages, conveyances, and every other security whatsoever, given or executed, by any person, where the whole or any part of the consideration of the same shall be for any money or other valuable thing won by playing at any game whatsoever, or won by betting on the hands or sides of such as do play at any game, or where the same shall be made for the repaying any money knowingly lent or advanced for the purpose of such gaming or betting aforesaid, or lent or advanced at the time and place of such play, to any person so gaming or betting aforesaid, or to any person who, during such play, shall play or bet, shall be utterly void."

The theory is that the plaintiff could not make out her title without proving illegal transactions, but the fact is that she did make out her case without any reference to the nature of Rodgers' transactions, all the testimony relating thereto being brought out in the defendant's case. We see no violation of the statute in question by the plaintiff. One who loans money to a loser in an illegal transaction can recover the loan, notwithstanding he knows that the loser is going to pay his indebtedness with it. Armstrong v. American Exchange Bank, 133 U. S. 433, 469, 10 Sup. Ct. 450, 33 L. Ed. 747. The verdict of the jury establishes the fact that Abrahams did not lose these moneys in betting with Rodgers, but was acting as a broker for a commission, and that he advanced moneys borrowed from the plaintiff on account of Rodgers to pay Rodgers' indebtedness to Davis, which were to be repaid out of the proceeds of sale of the locomotives.

We discover no error in the other assignments, and the judgment is affirmed.